**Ray Anthony PERKINS, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–81–0195–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 1981.

Rehearing Denied March 11, 1982.

Discretionary Review Refused
May 26, 1982.

Albert S. Low, Jr., Houston, for appellant.

James C. Brough, Asst. Dist. Atty., Houston, for appellee.

Before EVANS, C. J., and DOYLE and STILLEY, JJ.

EVANS, Chief Justice.

The appellant was indicted and tried for the theft of a motorcycle. The State alleged a prior aggravated robbery conviction for enhancement, and, after a jury trial, the appellant was found guilty and his punishment assessed at nine years and six months confinement and a $500.00 fine.

The appellant contends in his first ground of error that the evidence is insufficient to support his conviction, arguing that the State failed to rebut his explanation for having possession of recently stolen property.

The theft of the motorcycle occurred in Houston during the early morning hours of October 16, 1979. Several days later a police officer, talking with a safety inspector at Truckers, Inc., in Ft. Bend County, had his attention directed to a parked motorcycle which had been "hotwired" so as to pass the ignition switch that had been removed. On checking the license tag, the officer determined that the tag was registered to a different vehicle, and he then checked the vehicle identification number and found that the motorcycle had been reported stolen.

Later that afternoon, the same police officer observed the appellant driving the motorcycle out of the parking lot at Truckers, Inc., and the officer followed in his unmarked police vehicle. Two other marked police vehicles intervened between the officer and the motorcycle, apparently because the appellant had failed to stop at a stop sign, and the first officer radioed the other vehicles that the motorcycle had been stolen. The appellant's motorcycle was pulled over to the side of the road, and after the officers determined that the appellant had neither title registration nor a receipt for the motorcycle, they placed the appellant under arrest.

 The unexplained possession of stolen property is a sufficient basis to sustain a conviction for theft. *Barnes v. State*, 520 S.W.2d 401 (Tex.Cr.App.1975). However, where the party in possession gives a reasonable explanation for having recently stolen property, the State must prove that the explanation was false. *McElyea v. State*, 599 S.W.2d 828 (Tex.Cr.App.1980). Whether the explanation is reasonable and true is a question of fact. *Smith v. State*, 518 S.W.2d 823 (Tex.Cr.App.1975).

The appellant testified that at about 9:00 a. m. on the date of the theft, an associate of his named Charles Rodriguez, accompanied by a person named Charles Williams, came to his house and awakened him. The appellant was not personally acquainted with Williams, but had seen him at dances on several occasions. Rodriguez wanted to know if the appellant would buy a motorcycle from Williams, and the appellant was then given the opportunity to test-drive the vehicle. The appellant asked whether Williams had a title for the motorcycle and was shown a title bearing the name Charles Williams. He also asked Williams whether he had a registration for a license plate, and Williams advised him that he did not. Williams then told the appellant that he would sell the motorcycle to him for $600.00, with a $250.00 cash down payment and the balance to be paid at $50.00 per month.

According to the appellant, one mirror was gone from the motorcycle, the front signal lights were gone, and the ignition switch was "messed up" and had tape around it. Williams told the appellant that if he would purchase the motorcycle, he, Williams, would repair the defects.

The appellant then called Michael Lewis, the owner of a wrecking yard, who the appellant had known since childhood. He asked Lewis if he could borrow $250.00, and Lewis replied that he did not have that much money, but that he could let him have $120.00. Williams and the appellant then drove the motorcycle over to the salvage yard, where the appellant, saying that he was going to purchase a motorcycle, borrowed $120.00 from Lewis.

The appellant further testified that when he gave the money to Charles Williams, he received a written receipt, which he left in the glove compartment of a wrecked car at the salvage yard. He testified that the car was later destroyed and the receipt could not be found.

The appellant testified that he did not know the address or telephone number of Charles Rodriguez, but he knew where Rodriguez stayed and he could go there. He did not know an address or telephone number for Charles Williams, but he had taken Williams to an apartment unit on Bennington Street, and he was to have met Williams there later that week to have the motorcycle repaired. He could not give an address, but he knew Williams' apartment and had drawn a map showing where it was located.

Michael Lewis, the salvage yard owner, testified that the appellant had come to his office and asked to borrow $250.00, explaining that he wanted to buy "some wheels." Lewis assumed that this meant either an "auto or bike." He said he gave the appellant $150.00 and received a paper receipt, which he put in the glove box of an automobile on his lot. He later sent his son out to look for the receipt, but it could not be located, and he subsequently disposed of the automobile. On the day the appellant borrowed the money from him, he thought that the appellant had walked to his office, and he did not see the motorcycle or anyone else with the appellant. The receipt he had was not for the purchase of the motorcycle, but rather for the amount of money which the appellant had borrowed from him. He was never shown a receipt for the money the appellant paid for the motorcycle.

The Stafford police officer who arrested the appellant testified that he had observed the appellant drive the motorcycle out of Truckers, Inc., and that, together with the two intervening police vehicles, he had followed the motorcycle until it was finally stopped about 2½ blocks away. He testified that the two police cars ahead of him had their overhead lights and sirens going, trying to stop the appellant, and that the appellant did not pull over until his motorcycle failed. He said the appellant's motorcycle failed to function, and that it appeared to "stall out" and coast over to the side. He testified that the appellant offered no resistance after the motorcycle was stopped.

The officer further testified that after being read the *Miranda* warning, the appellant told him that he was buying the motorcycle from some man by the name of Charlie. He said that the appellant could not give him the last name or the address of the person named Charlie and could only give him a vague description of how to get to Charlie's residence. He said if he had been given more information, he would have tried to find the person from whom the motorcycle allegedly had been purchased. The appellant did not offer to take him to the person from whom he was buying the motorcycle. The appellant told him he was paying $600.00 for the motorcycle, but the officer could not recall whether that was the down payment or the total sales price.

The appellant denied that he had attempted to flee from the officers when he realized they were following him. He said the police vehicle behind him "was coming real fast" and had its siren going. The appellant denied that he had "gunned" his motorcycle engine or that the engine had failed; he said that he had pulled over to the side because "I know what it was." He said the first time the officer asked anything about the motorcycle was after he was taken to the police station, and that was when he told the officer about purchasing the motorcycle from Charlie Williams. He said that he told the officer that he had really purchased the motorcycle and had not stolen it, and he said he offered to show the officer where Charlie Williams lived. According to the appellant, the officer replied: "Well, I ain't got nothing to do with that. That's up to Harris County. This is Ft. Bend County." The appellant had been in jail ever since the time of his arrest, and he was, therefore, not in a position where he could try to locate Charlie Williams.

■ Because the state's case is based entirely on circumstantial evidence, the appellant's conviction may be upheld only if the circumstances shown exclude, to a moral certainty, every reasonable hypothesis other than the appellant's guilt. *Dixon v. State*, 541 S.W.2d 437 (Tex.Cr.App.1976). In applying this standard, the reviewing court must consider the evidence in a light most favorable to the appellant's innocence. *Flores v. State*, 551 S.W.2d 364 (Tex.Cr. App.1977).

The State contends that the falsity of the appellant's explanation may be inferred from his alleged attempted flight just prior to his arrest, the vagueness of his explanation regarding the name and whereabouts of the person who allegedly sold the motorcycle to him, and the contradictions and inconsistencies between his testimony and that of the salvage yard owner.

In *Huff v. State,* 492 S.W.2d 532 (Tex.Cr. App.1973), the defendant was convicted of theft of an automobile stolen in Houston in December, 1970. The defendant was arrested in February, 1971, when he was stopped by the California Highway Patrol for a minor traffic violation. A defense witness testified that she was with the defendant at the time of his arrest in California, and that shortly after their arrival in California, they had purchased the car in Los Angeles from one Charles Bell. She testified that she had given the defendant the cash to pay for the automobile, and that in the process of moving, she had misplaced the receipt given her. The arresting officer testified that at the time of the arrest, the appellant told him that he had purchased the automobile, paying $100.00 down and owing $75.00. Reversing the judgment and remanding the cause, the Court of Criminal Appeals stated:

> Where a defendant's explanation is reasonable and is sufficient to rebut the circumstance of possession of property recently stolen, the evidence is insufficient to sustain the conviction if it fails to show that the explanation was false.

■ In the present case, the State proved that the appellant was in possession of the stolen motorcycle, but the State also provided the proof, as in *Huff,* that the appellant explained to the officer, at the time of his arrest, that he had innocently purchased the stolen vehicle. The appellant's testimony that he had borrowed the cash down payment to purchase the motorcycle was substantially corroborated by the testimony of the salvage yard owner, and the State did not refute that testimony. Although there are some contradictions and inconsistencies in the testimony, the entire record, viewed in a light most favorable to the appellant's presumed innocence, does not refute or establish the falsity of the appellant's explanation. Certainly, the testimony in the case at bar is more indicative of the accused's innocent possession of the stolen vehicle than the circumstances outlined in *Huff, supra.* Furthermore, the arresting officer's account of the appellant's conduct just prior to his arrest showed that the appellant's actions were as equally consistent with innocent behavior as with an attempt to avoid arrest.

The appellant's first ground of error is sustained.

■ In his second ground of error, the appellant contends that the trial court erred in overruling his objections to improper argument by the State. During the guilt phase of the trial, the appellant admitted that he had been convicted of aggravated robbery, but during the punishment phase of the trial, he pleaded "not true" to the enhancement paragraph of the indictment. The appellant's counsel, during his closing argument, explained to the jury the effect of the "not true" plea as follows:

> The Defendant by his plea of not true has caused the State to prove every issue that the State must prove and each one of the issues raised in the enhancement paragraph of the indictment. The only way he can do that and require the State to prove that is to plead not true. The Defendant is not trying to pull any kind of sham or anything like that.
>
> But that's just the only procedural way he can call and require the State to prove every enhancement—every allegation in the enhancement paragraph of the indictment.

During the State's closing argument in the punishment phase of the trial, the prosecutor made the following remarks, to which the appellant objected:

> MR. HINTON: Your Honor, Mr. Low, ladies and gentlemen of the jury: Can you believe this guy, Ray Anthony Perkins? He lied blatantly many times during the guilty or innocence phase of this trial. So I guess his attitude now is why change that. Why start telling the truth now? Now, this line about, well, he's got to plead not true to the enhancement paragraph so the State will have to prove up all the technicalities of the enhancement paragraph, that's baloney.
>
> Mr. Low: I object to that. The only way the Defendant can raise the issues in this case is to plead not true and to say that

the Defendant has lied because he's pled not true is prejudicial, and I would request the Court to instruct the Prosecutor not to go into this line of argument. He knows it's improper. He knows that the Defendant has to plead true or not true, and by pleading not true is the only way that he can require the State to prove all the enhancement paragraphs, because he has a right to remain silent. That's the only way he can cause the State to do that, and that this line of argument is totally improper.

The Court: Counsel, you made the statement. You're overruled. Go ahead.

Mr. Hinton: Ladies and gentlemen, what I say is not evidence in this case, and that's been told to you several times. But it's surely my impression of what has gone on here today. He either in my view of the evidence—he either prior to this conviction for theft that you found him guilty of committed aggravated robbery or he didn't, and if he did, he should have gotten up there and—, I mean, if he didn't, according to him he didn't, he's pleading not true. So I don't see how you can say that he did and he didn't at the same time. He's saying that he didn't in my view and that's a lie in my view.

The appellant contends that the State's argument constituted reversible error, citing *Lopez v. State*, 500 S.W.2d 844 (Tex.Cr. App.1973), and *Anderson v. State*, 525 S.W.2d 20 (Tex.Cr.App.1975). In *Lopez* the State improperly accused the defendant of lying because he had entered a plea of not guilty, and in *Anderson* the State improperly referred to the defendant's failure to testify. In neither of those cases, however, did the defendant testify, placing his credibility before the jury.

The State contends that the argument was invited and that it was entitled to comment on the appellant's credibility because of the conflict between the State's testimony and that of the appellant.

The appellant's plea of "not true" was not testimony before the jury, and the explanation of the appellant's counsel as to

the purpose of such a plea was merely to show that the State was required to meet its burden of proof for enhancement.

In *Franks v. State*, 574 S.W.2d 124 (Tex. Cr.App.1978), it was held that the defense counsel's explanation to the jury that the defendant did not have the burden of proof and, therefore, was not required to testify, did not constitute an invitation for argument by the State that the defendant had not testified because he had nothing to say in his own defense.

In the instant case, the State's argument that the appellant's plea of "not true" was a lie amounted to an accusation that the appellant was lying under oath. The court's sanction of such improper argument constitutes reversible error, and the appellant's second ground of error is also sustained.

In his third ground of error, the appellant contends that the trial court erred in refusing his request to voir dire the jury panel on the full range of punishment applicable to a second degree felony. The appellant has not shown that such a request was made during trial, and in the absence of an appropriate bill of exception, there is nothing for this court to review. The third ground of error is overruled.

For the reasons stated, the trial court's judgment is reversed and the cause is remanded for entry of a judgment of acquittal.