**Charles Bernard GAFFNEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–95–00159–CR.

Court of Appeals of Texas,
Texarkana.

Argued Oct. 1, 1996.

Decided Oct. 30, 1996.

Rehearing Overruled Nov. 26, 1996.

Sydney Young, Gary L. Waite, Paris, for appellant.

Tom Wells, County Attorney of Lamar County, Deane A. Loughmiller, Assistant District Attorney, Paris, for appellee (State).

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

STARR, Justice.

Appellant was convicted of the offenses of aggravated robbery and aggravated kidnapping of Jeff Moore. Trial was to a jury. The jury set appellant's punishment at confinement for ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant presents three points for review on this appeal. We will discuss the points in the following order: (1) Was the evidence legally and factually sufficient to support the conviction for aggravated kidnapping? (2) Did the trial court err by overruling appellant's *Theus* motion to testify without impeachment by prior conviction? (3) Did reversible error occur when the prosecutor referred to appellant as "Mr. Liar" in jury argument?

█ When the appellant challenges both the legal and factual sufficiency of the evidence, an appellate court must first determine whether evidence adduced at the trial was legally sufficient to support the verdict. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex. Crim.App.1996). The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Geesa v. State,* 820 S.W.2d 154, 157 (Tex.Crim.App.1991); *Jackson v. State,* 672 S.W.2d 801 (Tex.Crim.App.1984). The inquiry does not require a reviewing court to ask itself whether "it" believes that the evidence at the trial established guilt beyond a reasonable doubt. In this regard, the court is not to position itself as a thirteenth juror in assessing the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Appellate judges are not fact finders. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Rather, it is to position itself as a final, due process safeguard, ensuring only the rationality of the fact finder. *Moreno,* 755 S.W.2d at 867, stating:

> The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done. The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt. Such a verdict must stand unless it is found to be irrational....

Whether the evidence satisfies the *Jackson v. Virginia* test is a question of law. A determination that the evidence is legally insufficient means that the case should never have been submitted to the jury. If the evidence is found legally insufficient, the case must result in acquittal as a matter of law.

In contrast, the issue of factual sufficiency is a question of fact. In conducting a factual sufficiency review, an appellate court reviews the fact finder's weighing of the evidence in an appropriately deferential way so as to avoid substituting the reviewing court's judgment for that of the jury. *Clewis, supra.* In conducting a factual sufficiency review, the court of appeals "views all the evidence without the prism of 'in the light most favorable to the prosecution.'... [and] set[s] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* Accordingly, courts of appeals should vacate a conviction based on factually insufficient evidence and remand the cause for a new trial.

We review the entire record in the case to determine legal and factual insufficiency of the evidence. The record indicates that on December 4, 1994, Charles Gaffney asked Jeff Moore to give him a ride so that he could get gasoline for his car. Moore acquiesced, and Gaffney got into Moore's vehicle with a duffle bag. At Gaffney's direction, Moore took him to get a gas can—which turned out to be nonexistent. After Gaffney got back into the car, he started drinking and then told Moore that he had a gun in his bag. Afterward he pulled out the pistol and de-

manded money. Moore threw his billfold at Gaffney and left.

In order to prove aggravated kidnapping under the indictment and court's charge, the jury was required to find that Gaffney intentionally or knowingly abducted Moore. In the court's charge the term "abduct" was defined as meaning "to restrain a person with intent to prevent his liberation by using or threatening to use deadly force." Appellant contends that the State's evidence did not prove the elements of the definition of "abduct."

In appellant's testimony an alibi defense was presented. He testified that he was not the person involved in the Jeff Moore incident. He gave testimony about being with other persons at the time. The only other witness presenting testimony about the occurrence was Jeff Moore, himself. After preliminary testimony about taking Gaffney to get a gas can, Moore testified, as follows:

A. ... And he told me that he hadn't found no gas can or something like this and so he had some gear in a bag and he was drinking and at this time I was kind of wondering what's going on because we was supposedly just getting gas. So we rode around for a little bit longer and he made a point that he had a gun in his bag.

Q. What did he say about that?

A. He just flat told me that he had a gun in the bag. I didn't ask questions or nothing because I had done been riding around with the individual and now knowing that he's got a gun in the bag, that's the last thing I was wanting to hear.

Q. How did that make you feel?

A. It scared me.

Q. Why did it scare you?

A. Because I did not know the man. He was drinking and I mean we were supposed to have went and got gas and we haven't made no attempt to do that and he also had a gun, or said that he had a gun.

Q. Who was giving directions when you were driving around?

A. He was. I had no idea where I was even at.

Q. How many different places did ya'll go to?

A. We only went to 2. But we went down no telling how many different roads and back roads and stuff.

Q. And so after about—How long did ya'll ride around like that?

A. I'm going to say about 45 minutes or longer.

Q. Then what happened next?

A. And then he—I told him—I was getting worried because nothing was going like it should have been going just to go get gas and I was getting pretty worried and scared and so I made up a lie. I told him I need to get out of there, I need to go take my friend back to work, and he said don't worry, I will have you back, and I said I've got to go pretty quick because he's going to be late for work, and he said don't worry, I will have you back on time to get him to work.

Q. He said I will have you back?

A. Yes, sir.

Q. All right.

A. And so we went on and finally he said pull over here. I pulled over and I figured it was all over and he got his bag out and he asked for my money and I told him I didn't have none and he asked me for my billfold and he pulled the gun out and pulled it down towards his side, and right then I mean it just freaked me out and I just handed him my billfold and he pulled the money out and threw it in the floor and run to the back of the Blazer and took off.

■ It is clear under the law that threats may be communicated by actions and deeds as well as by words, and may include acts amounting to an offer to use future force. *Seaton v. State,* 564 S.W.2d 721, 724 (Tex. Crim.App.1978). The cases indicate that in situations where a person is taken in a vehicle, proof that a victim is kept isolated from anyone who might have been of assistance— as in this case by directing Moore to drive in unpopulated areas on back roads—the element of secreting or holding him in a place where he is not likely to be found is met. *Fann v. State,* 696 S.W.2d 575, 576 (Tex. Crim.App.1985); *Wiley v. State,* 820 S.W.2d 401, 409 (Tex.App.—Beaumont 1991, no pet.).

The evidence is both legally and factually sufficient to support the jury verdict under both the indictment and the court's charge. We overrule appellant's point of error on legal and factual insufficiency.

■ We now address appellant's *Theus* contention. *See Theus v. State,* 845 S.W.2d 874, 881–82 (Tex.Crim.App.1992). A trial court may admit evidence of felony convictions for impeachment if it determines that the evidence's probative value outweighs its prejudicial effect. TEX.R.CRIM. EVID. 609(a). His prior convictions for burglary of a building and delivery of a controlled substance were both felonies. In determining whether the probative value of a conviction outweighs its prejudicial effect, the trial court should consider: (1) its impeachment value, (2) its temporal proximity to the charged offense and the witness's subsequent history, (3) similarity between it and the offense charged, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Theus,* 845 S.W.2d at 880; *Cuba v. State,* 905 S.W.2d 729, 733 (Tex.App.—Texarkana 1995, no pet.). In reviewing the trial court's weighing of these factors and its decision, an appellate court will accord the lower court wide discretion. *Theus,* 845 S.W.2d at 881. The reviewing court will reverse the trial court's determination only if its decision lies outside the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

We are persuaded that the fourth and fifth factors under Rule 609, Texas Rules of Criminal Evidence, weigh heavily in this particular case. Appellant presented an alibi defense by his own testimony, without substantial corroboration by other witnesses. As noted in the *Theus* case, *supra,* when an alibi defense depends primarily on the testimony of other witnesses, the defendant's credibility is not likely to be a crucial issue. However, where the defense turns largely on the testimony of the defendant, himself, the importance of the defendant's credibility escalates, and so will the need to allow the State an opportunity to impeach the defendant's credibility. *United States v. Fountain,* 642 F.2d 1083, 1092 (7th Cir.), *cert. denied,* 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981). We are persuaded that the evidence concerning the prior convictions had a high probative potential because of the extent to which Gaffney's credibility was in dispute under the record. We overrule appellant's point of error under *Theus, supra.*

■ In his last point appellant urges improper argument arising out of the prosecutor's calling appellant "Mr. Liar." It is improper for a prosecutor to engage in name-calling designed to evoke an emotional response and thus encourage the jury to come to a verdict on some other basis than the facts before it. *Renn v. State,* 495 S.W.2d 922 (Tex.Crim.App.1973) (calling the defendant a hippie, anti-Christ, and Communist). Nevertheless, a prosecutor is allowed to argue that witnesses for the defense are not worthy of belief. *Satterwhite v. State,* 858 S.W.2d 412, 425 (Tex.Crim.App.1993). Arguing that a witness is lying constitutes an argument to the jury that the witness is not worthy of belief. No error is shown in this respect.

In a slightly different version of this argument, Gaffney contends that the mere contention that he had lied on the stand constitutes reversible error. In *Lopez v. State,* 500 S.W.2d 844 (Tex.Crim.App.1973), as in other cases cited by Gaffney, an argument by the prosecution that the defendant was lying was found to be reversible error. Those cases differ from this case in one critical respect: the defendant did *not* testify, and the alleged *lie* was the entry of a plea of "not guilty." *See generally Owen v. State,* 656 S.W.2d 458 (Tex.Crim.App.1983); *Anderson v. State,* 525 S.W.2d 20 (Tex.Crim.App.1975); *Perkins v. State,* 630 S.W.2d 298, 302 (Tex.App.—Houston [1st Dist.] 1981, pet. ref'd, untimely filed). In those cases, the credibility of the defendant was not before the jury. Where the defendant takes the stand, his credibility is in question, and the prosecution has the right to attack his testimony in the same manner as any other witness, so long as the opinions of counsel are based upon the facts and inferences provided by the evidence. *Adams v. State,* 813 S.W.2d 698, 700 (Tex.App.—Hous-

ton [1st Dist.] 1991, pet. ref'd). No error has been shown under appellant's third point.

We affirm the judgment of the trial court.