Todd HILTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–97–00208–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 13, 1998.
Decided Aug. 25, 1998.

Richard N. Dodson, Texarkana, for appellant.

Bill Saban, Dist. Atty., Henderson, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Todd Hilton was convicted of theft of timber. He appeals, contending that the evidence is ·insufficient to support the jury's verdict and that the trial court erred in failing to instruct the jury that a witness was an accomplice witness as a matter of law. We will affirm the judgment.

Kent Walker owns Pittsburg Timber Company. Walker's brother-in-law, the appellant Todd Hilton, worked for Walker at the timber company. Walker hired Robert Baker to harvest timber for his company. In early 1994, Hilton, Walker, and Baker went to Washington, D.C. and secured a timber con-

tract signed by Day Fletcher. Hilton also signed the contract as buyer. The contract purported to convey to Hilton all timber three inches or more in diameter growing on an unspecific, undescribed tract of land in Rusk County. Walker assigned to Baker the job of cutting the timber, piling and loading it, and cleaning up after the cutting. Baker was paid five dollars a ton for the timber harvested. Hilton and Walker told Baker where to cut. Baker cut timber on the tract for about a month. During that time, work was stopped about once a week because of complaints from landowners. Hilton was the person who told Baker to stop and start cutting, although Hilton testified that in doing so he was only relaying Walker's directions. Additionally, Hilton obtained a road use permit and arranged for it to be issued to "Walker Timber Company" for the purpose of hauling the timber over public roads.

Annette Horne owned forty acres of land in Rusk County. In early 1994, a neighbor of Horne's, Glenn Honzell, was told by his son that someone was cutting timber on Horne's land. He tried to contact Horne but could not. He then went to the property himself and talked to several people who were engaged in cutting timber on Horne's land. These people told him that they had a right to be there because they had bought the timber. Honzell identified Hilton as one of the men to whom he talked. At the time of these discussions, the crew had cut about one third of Horne's forty acres. Honzell walked the tract and showed Hilton the boundaries of Horne's property. Specifically, he pointed Hilton to a fence and told him that everything within the fence was Horne's. Hilton told Honzell that he had purchased the timber from a woman in Washington, D.C. Honzell testified that he thought Annette Horne might have a relative whose name was Day Fletcher, but he did not discuss with Hilton whether Day Fletcher was a daughter of Horne's, and neither he nor Hilton was acting under that impression.

At trial, Horne testified that she had never heard of Day Fletcher. A local attorney testified that he was familiar with land titles in the vicinity of the land, that he had never

heard of Day Fletcher, and that her name did not appear in title searches on the Horne land records or any records of the surrounding land.

Hilton was charged with unlawfully appropriating, by acquiring and otherwise exercising control over, pine timber without the consent of the owner. Hilton asserted the defense of mistake of fact, specifically arguing that he did not know that the timber was owned by Annette Horne. The jury returned a verdict of guilty and assessed Hilton's punishment at eight years' confinement, probated.

■ Hilton's first point of error challenges the sufficiency of the evidence. As Hilton challenges only the trial court's failure to grant his motion for directed verdict, his challenge is limited to legal sufficiency. *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990); *Chase v. State*, 573 S.W.2d 247, 249 n. 1 (Tex.Crim.App. [Panel Op.] 1978).

■ The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Madden v. State*, 799 S.W.2d at 686; *Royal v. State*, 944 S.W.2d 33, 35 (Tex.App.-Texarkana 1997, pet. ref'd); *Gaffney v. State*, 937 S.W.2d 540, 541 (Tex.App.-Texarkana 1996, pet. ref'd). If there is any evidence that could establish guilt beyond a reasonable doubt, the conviction will not be reversed for legal insufficiency. *Anderson v. State*, 871 S.W.2d 900, 902 (Tex.App.-Houston [1st Dist.] 1994, no pet.). We position ourselves as a final due process safeguard, ensuring only the rationality of the fact finder. *Gaffney v. State*, 937 S.W.2d at 541. Further, we do not evaluate the credibility of the witnesses or reweigh the evidence. *Chase v. State*, 573 S.W.2d at 249 n. 1.

In the light most favorable to the verdict, the evidence showed that Hilton traveled to Washington, D.C. with two others. Once in Washington, he participated in securing and

executing a contract for timber. There is no evidence that the person purporting to sell the timber had any ownership in the land or timber or any right to authorize its cutting. The contract purports to convey the timber to Hilton. An investigator could not obtain from Hilton, Baker, or Walker the address, phone number, or whereabouts of the other party to the contract. Hilton obtained the road use permit for the operation. Hilton was on the scene during the cutting of the timber. A neighbor, Honzell, told Hilton that he was cutting Annette Horne's timber, and walked him around the fence line and told him that all the land inside the fence belonged to Annette Horne. In general, Hilton believed Honzell, because during the same discussion, he made a deal with him to buy Honzell's timber that he had already cut and cleared. Hilton told Honzell that he had bought the timber from a woman in Washington. Finally, there is evidence from which the jury could find that Hilton had some control over the operation because he had the authority to start and stop the cutting.

The jury charge defined theft as an offense where a person unlawfully appropriates property with intent to deprive the owner of such property. Intent is a fact issue for the jury. *Rodriguez v. State*, 793 S.W.2d 744, 748 (Tex.App.-San Antonio 1990, no pet.). Intent is usually established by circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92 (Tex.Crim.App. [Panel Op.] 1978). It is usually inferred from the acts, words, and conduct of the accused. We find some evidence that would allow a reasonable jury to find that Hilton had the required intent to deprive Horne of her timber. There is evidence that Hilton was at the scene of the cutting and was told that he was cutting timber belonging to Horne instead of the alleged person with whom he had contracted. Further, he did not stop the cutting at that time, even though he had the authority to start and stop the cutting process. From all this evidence, a rational jury could reasonably believe that Hilton, Walker, and Baker acted together to obtain a fraudulent timber contract and use it as a cover in unlawfully appropriating Horne's timber. We find legally sufficient evidence to support the jury's finding that Hilton was guilty of theft.

Hilton argues that he proved the defense of reasonable mistake of fact. The jury was fully instructed on the defense in the charge, but obviously did not believe Hilton's defense. There was some evidence of a mistake of fact, but there is also evidence refuting that claim. The jury has the responsibility to weigh the conflicting evidence and make a decision. We may not overturn the jury's verdict under a legal sufficiency challenge when there is conflicting evidence.

Hilton points out that the State relied on the law of parties, but the jury was not instructed on the law of parties. The Texas Penal Code states, "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (Vernon 1994). Where there is no charge on the law of parties, a defendant may only be convicted on the basis of his own conduct. *Goff v. State*, 931 S.W.2d 537 (Tex.Crim.App.1996); *Walker v. State*, 823 S.W.2d 247, 248 (Tex. Crim.App.1991). As stated, Hilton made the alleged contract, was at the scene of the theft, made arrangements for the road permit, dealt with local owners who complained about the cutting, and agreed to pay the local owners for any losses. He was told by a neighbor that Baker and his team were cutting Horne's trees, yet failed to stop Baker from persisting in cutting, although he had the power to do so. These facts constitute some evidence that Hilton was guilty as a principal. Consequently, the absence of a charge on the law of parties was harmless.

In Hilton's second point of error, he claims that the trial court erred in failing to instruct the jury that Baker was an accomplice witness as a matter of law, and that this error caused egregious harm to him and requires reversal of his conviction. An accomplice is a person who has been a participant in the alleged crime either before, during, or after its commission and may be subject to prosecution for the offense. *Mo-*

*ron v. State*, 779 S.W.2d 399 (Tex.Crim.App. 1985); *Villarreal v. State*, 576 S.W.2d 51 (Tex.Crim.App.1978). The accomplice witness rule is found in TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). It states, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." The general policy behind the accomplice witness rule is that the accomplice is a discredited witness, and his testimony is to be carefully scrutinized because he may have an interest in the outcome of the trial and may be a corrupt source. *Beathard v. State*, 767 S.W.2d 423, 429 (Tex.Crim.App.1989); *Brosky v. State*, 915 S.W.2d 120, 137 (Tex.App.-Fort Worth, pet. ref'd), *cert. denied*, —— U.S. ——, 117 S.Ct. 537, 136 L.Ed.2d 422 (1996).

Hilton complains because the trial court did not instruct the jury that Baker was an accomplice witness as a matter of law. Baker had been indicted for the theft of Horne's timber, but the indictment was dismissed a day before Hilton went to trial.[1]

■ A person is an accomplice as a matter of law when he is under indictment for the offense, or when the facts conclusively show that he participated in the offense and is subject to prosecution for the offense. *McFarland v. State*, 928 S.W.2d 482 (Tex. Crim.App.1996). If the facts are conflicting or inconclusive as to the person's participation in the offense, he may be an accomplice, but it is a fact question.

■ In this case, there is evidence from which it may be inferred that Baker knowingly participated in the theft of the timber, but there is also evidence that he did not knowingly participate in the theft. In that situation, Baker is not an accomplice as a matter of law, but may be one as a matter of fact. Thus, an instruction that he was an accomplice as a matter of law was not required.

■ Hilton does not complain of the court's failure to charge the jury on whether Baker was an accomplice as a matter of fact. If a witness is not an accomplice as a matter of law, and if the defendant did not request a submission of the witness' status to the jury, the conviction of the defendant may be sustained even though the evidence tends to prove that the witness was an accomplice. *Talmadge v. State*, 91 Tex.Crim. 177, 237 S.W. 568 (1922); 25 TEX.JUR.3D *Criminal Law* § 3444 (1983).

The recent case of *Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App.1998), held that there is no error in a jury charge where a "defensive issue" is omitted and the defendant fails to object or request that such an issue be given. In that situation, no harm analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984), is necessary or proper. The opinion in *Posey* does not make it clear whether a charge on accomplice testimony is a "defensive issue," but comments in a dissent by Judge Meyers indicate that a charge that a witness is an accomplice witness as a matter of law is not a "defensive issue," even though it inures to the defendant's benefit, and an *Almanza* analysis may still be necessary when such a charge is omitted and the defendant fails to object. *Posey v. State*, 966 S.W.2d at 75 n. 5 (Meyers, J., dissenting).

■ It is not necessary for us to decide this question. If *Posey* applies here, there is no error in failing to charge on Baker's alleged position as an accomplice witness as a matter of law. If *Posey* does not apply to accomplice instructions, we find that, using an *Almanza* analysis, there was no egregious harm to Hilton in failing to give the instruction. Egregious harm is shown only if the defendant did not receive a fair and impartial trial. Failure to receive a fair trial is shown if rational jurors would have found the State's case significantly less persuasive had they been told that the accomplice's testimony could not be accepted without corroboration. *Saunders v. State*, 817 S.W.2d 688, 693 (Tex.Crim.App.1991). But if

---

**1.** Dictum in *Otto v. State*, 117 Tex.Crim. 257, 36 S.W.2d 177, 178 (1931), indicates that the dismissal of an indictment against a witness removes him from the status of an accomplice as a matter of law.

other testimony from nonaccomplice witnesses so clearly warranted conviction that the jury would most likely not have regarded the State's case as being less persuasive had the accomplice witness instruction been given, reversal is not required. *Solis v. State,* 792 S.W.2d 95, 98 (Tex.Crim.App.1990); *Hall v. State,* 937 S.W.2d 580 (Tex.App.-Texarkana 1996, pet. ref'd).

■ A rational juror would not have found the State's case against Hilton significantly less persuasive if they had been told that Baker's testimony could not be accepted without corroboration. Without Baker's testimony, the evidence would have shown that Hilton made the alleged contract in Washington. He was at the scene of the crime, and was apparently in charge of the operation. Hilton obtained the road permit and made a deal to pay Horne's neighbor for the loss of his timber. Hilton was told by the neighbor that the land on which the crew was cutting timber belonged to Horne, but the crew continued to cut the timber. Baker mainly testified about the relationships between himself, Walker, and Hilton. If anything, Baker's testimony helped Hilton by diverting the attention from Hilton to Walker. We find that Hilton has not met the burden of proving that he was egregiously harmed by the failure to instruct.

For all the reasons stated, we affirm the judgment.