Franklin **CANTRELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–00–00014–CR.

Court of Appeals of Texas,
Texarkana.

Submitted May 3, 2001.

Decided May 22, 2001.

Rehearing Overruled July 3, 2001.

George M. Secrest, Jr., Bennett & Secrest, LLP, Houston, for appellant.

Gail Kikawa McConnell, Asst. Dist. Atty.–Appellate Section, Conroe, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Cornelius, Chief Justice.

A jury convicted Franklin Cantrell of criminal conspiracy to misapply fiduciary property. TEX.PEN.CODE ANN. § 15.02 (Vernon 1994), § 32.45 (Vernon Supp. 2001). The jury assessed his punishment at five years in prison, probated for ten

years, and a $10,000.00 fine. Additionally, the trial court ordered Cantrell to pay $370,000.00 in restitution as a condition of his community supervision. On appeal, Cantrell challenges both the legal and factual sufficiency of the evidence to support the conviction. Cantrell also alleges that the trial court committed reversible error by constructively amending the indictment, violating due process of law, and that the restitution order requiring Cantrell to pay $370,000.00 is erroneous. We overrule each of Cantrell's points of error and affirm the judgment of the trial court.

In early 1987, Gulf States Utilities (GSU) sought a gas supplier to enter into a "swing" contract arrangement.[1] Sabine Gas Transmission Company. (Sabine)[2] agreed to enter into this "swing" arrangement with GSU. Sabine did not have its own supply of gas, so in order to meet GSU's requirements Cantrell, then president of Sabine, entered into a gas supply contract, GS–108,[3] with Kenneth Patterson, senior vice president of Winnie Pipeline (Winnie).[4] The contract stipulated that Winnie would supply gas to Encon/Sabine (ES) at the producer price index, commonly referred to as AIP,[5] plus fifteen cents per "Million British Thermal Units" or MMBTU.[6] ES then resold the gas to GSU pursuant to their previous swing contract arrangement. Before entering into the GS–108 contract with Winnie, Cantrell was referred to Patterson by Navarro Crowson (Crowson), a former employee of Winnie. Patterson eventually met with Cantrell regarding supplying ES with gas to fulfill its agreement with GSU. As a result of the contract between ES and Winnie, Crowson was paid a commission of five cents per MMBTU, or unit of gas sold.[7] Crowson, after deducting for federal income taxes, paid one half of the remaining commission to Patterson. In August 1992, Cantrell was subpoenaed to appear in federal court and testify in a proceeding brought by Mitchell Energy to recover monies from Crowson. Cantrell was eventually indicted on April 27, 1999, for criminal conspiracy of misapplication of fiduciary property and was convicted on September 22, 1999.

■ On appeal, Cantrell attacks both the legal and factual sufficiency of the evidence to support the conviction. Legal and factual challenges to the sufficiency of the evidence require the use of separate and distinct standards. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). A legal sufficiency review requires us to view the relevant evidence in the light most favorable to the verdict. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 23 S.W.3d at 7; *Hines v. State,* 978 S.W.2d 169, 172 (Tex.App.—Texarkana 1998, no pet.). In contrast, a factual sufficiency review requires that we view the evidence

1. This "swing" contract was new to the gas industry and unusual. Instead of the commonly used "take or pay" provisions, where a buyer like GSU was required to purchase gas regardless of its needs, this arrangement allowed a gas supplier to commit to provide a percentage of GSU's gas needs.

2. Energy Consultants, Inc. (Encon) later became intermingled with Sabine. The resulting entity became known as Encon/Sabine in the industry.

3. GS–108 was entered into on May 1, 1988.

4. Winnie was a subsidiary of Mitchell Energy & Development Corporation.

5. The index is a weighted average of gas sold in a given month formulated by an energy consulting group.

6. A unit of measurement of gas.

7. Cantrell admitted that ES had agreed to pay Crowson a broker fee for arranging GS–108.

in a neutral light that favors neither party. *Johnson v. State,* 23 S.W.3d at 7.

 When a challenge to both legal and factual sufficiency is presented, we first determine whether the evidence is legally sufficient to support the verdict. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex. Crim.App.1996); *Hines v. State,* 978 S.W.2d at 172. If we find the evidence legally insufficient, we must reverse the judgment and render a judgment of acquittal. *Gaffney v. State,* 937 S.W.2d 540, 541 (Tex.App.—Texarkana 1996, pet. ref'd). If we find the evidence factually insufficient, we reverse the judgment and remand the cause to the trial court for a new trial. The standard for reviewing the sufficiency of the evidence is the same for cases involving direct or circumstantial evidence. *Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984).

 A legal sufficiency review requires us to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781; *Johnson v. State,* 23 S.W.3d at 7; *Hines v. State,* 978 S.W.2d at 172. An inquiry into legal sufficiency does not require us to ascertain whether we believe the evidence at trial established guilt beyond a reasonable doubt. *Gaffney v. State,* 937 S.W.2d at 541. If there is any evidence that could establish guilt beyond a reasonable doubt, the conviction will not be reversed for legal insufficiency. *Hines v. State,* 978 S.W.2d at 172. This Court positions itself as a final due process safeguard to ensure the rationality of the fact finder. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Hines v. State,* 978 S.W.2d at 172.

Cantrell contends there is legally insufficient evidence to show that he knowingly conspired to misapply fiduciary property. Under TEX.PEN.CODE ANN. § 15.02, a person commits criminal conspiracy if, with the intent that a felony be committed: (1) he agrees with one or more persons to engage in conduct that constitutes the offense; and (2) he or one or more of them performs an overt act in pursuance of the agreement. Moreover, a person commits the felony of misapplication of fiduciary property if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary in a manner that involves substantial risk of loss to the owner of the property or to the person for whose benefit the property is held. TEX.PEN.CODE ANN. § 32.45. Under § 32.45, the term "misapply" means to deal with property contrary to an agreement under which the fiduciary holds the property or a law prescribing the disposition of the property. TEX.PEN.CODE ANN. § 32.45(2)(A), (B).

 The State presented testimony at trial that Patterson signed a "conflict of interest" policy that prohibited him from entering into transactions against the interest of Mitchell Energy, owner of Winnie, for his own personal gain. The State used evidence of this policy as the agreement necessary to establish a fiduciary relationship between Patterson and Winnie. Additionally, the State produced evidence that Cantrell sought to negotiate a lower price for ES from Winnie under the GS–108 contract by promising to give Patterson one half of the commissions allocated for Crowson. This scheme effectively lowered the amount of money Winnie could demand for its gas,[8] while enriching

---

8. The evidence suggests that under the GS–108 contract, Winnie's gas was sold at fifteen cents less than it was resold by ES. In light of this decrease of fifteen cents per unit of gas sold, Winnie lost approximately $15,000,000.00.

Patterson, Cantrell, and Crowson in violation of Patterson's fiduciary duty to Winnie.

■ Cantrell contends that he did not knowingly agree with Crowson or Patterson to engage in conduct constituting misapplication of fiduciary property. The essential element of criminal conspiracy is an agreement to commit a crime. *See Williams v. State*, 646 S.W.2d 221, 222 (Tex.Crim.App.1983). According to Cantrell, because the State produced no evidence that he made an agreement with Crowson and Patterson, the conspiracy allegation must fail. However, under TEX. PEN.CODE ANN. § 15.02, an agreement may be inferred from the acts of the parties. *See Cuellar v. State*, 13 S.W.3d 449, 453 (Tex.App.—Corpus Christi 2000, no pet.). Moreover, because conspirators' work is often clandestine in nature, direct evidence is not required to support a conviction for criminal conspiracy; circumstantial evidence will suffice. *Butler v. State*, 758 S.W.2d 856, 860 (Tex.App.—Houston [14th Dist.] 1988, no pet.).

The bulk of the evidence against Cantrell is from the testimony of his alleged co-conspirators, Crowson and Patterson.[9] Both testified that Cantrell directed the conspiracy. Additionally, Crowson testified that Cantrell knew that Crowson was paying Patterson to influence the lower price offered by Winnie to ES under the GS–108 contract. Furthermore, Crowson testified that he spoke with Cantrell about deducting one half of Crowson's commissions from Randy Stevens', (Patterson's son-in-law and an employee of ES), salary expenses and passing that half of the commissions on to Patterson. Patterson's testimony substantiated this commission deduction scheme.

■ A conviction may not be based on the testimony of an accomplice witness unless the accomplice's testimony is corroborated by other evidence tending to connect the accused to the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). Contrary to Cantrell's assertion, we do not review the legal and factual sufficiency of corroborative evidence. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex.Crim.App.1999), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000). Rather, to determine whether an accomplice's testimony is sufficiently corroborated, we eliminate from consideration the testimony of the accomplice witness and examine the remaining evidence to ascertain whether there is evidence that tends to connect the accused to the offense. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997); *Cockrum v. State*, 758 S.W.2d 577, 581 (Tex.Crim.App. 1988). The combined cumulative weight of the incriminating evidence furnished by the nonaccomplice witnesses is sufficient if it tends to connect the accused to the offense. *Reed v. State*, 744 S.W.2d 112, 126 (Tex.Crim.App.1988). It is not necessary that the corroborative evidence directly link the accused to the offense or be sufficient in itself to establish guilt beyond a reasonable doubt.

ES's own records sufficiently corroborate the testimony of both Crowson and Patterson. From April 1989 to December 1990, Crowson's commission was reduced by an amount that was exactly one half of Stevens' salary. Not only does this evidence corroborate the testimony of Crowson and Patterson, it also tends to connect Cantrell to the misapplication of fiduciary funds. On a legal sufficiency challenge, we

---

9. Both Crowson and Patterson had previously pleaded guilty to misapplication of fiduciary property.

do not assess the evidence as a whole, but only examine the evidence most favorable to the verdict. Viewed from that perspective, the evidence is legally sufficient to support the verdict.

The courts of appeals are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of an offense. *Johnson v. State*, 23 S.W.3d at 6. In determining factual sufficiency, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 7 (quoting *Clewis v. State*, 922 S.W.2d at 129); *Hines v. State*, 978 S.W.2d at 172. We review the evidence that tends to prove the facts in dispute and compare it with the evidence that tends to disprove those facts. In conducting a factual sufficiency review, we have the authority to disagree with the fact finder's determination. Our review must be appropriately deferential to avoid substituting our judgment for that of the fact finder. *Hines v. State*, 978 S.W.2d at 172. Our evaluation should not intrude on the fact finder's role as the sole judge of the weight and credibility given to witness testimony.

The appropriate scope of a criminal factual sufficiency review encompasses both formulations used in civil jurisprudence. *Johnson v. State*, 23 S.W.3d at 11. The evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust, or if the finding is against the great weight and preponderance of the evidence. The complete and correct standard this Court must follow in conducting a factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.

The main contention advanced by Cantrell in his factual sufficiency challenge is that the GS–108 contract was signed in May 1988, while the indictment avers that the alleged conspiracy commenced in January 1986. Cantrell contends that this fact alone undermines the existence of the alleged conspiracy. However, the State produced evidence that Cantrell had engaged in a similar scheme in 1986. This evidence demonstrated that ES was tapped to acquire gas for GSU. To this end, Cantrell arranged for Winnie to supply gas to Ladd Petroleum, which in turn would sell the gas to GSU. This arrangement required ES to pay Crowson a commission, which he in turn shared with Patterson to influence the deal between Winnie and Ladd. ES received fifteen cents per MMBTU sold to GSU by Ladd.

We disagree with Cantrell's contention that the evidence is factually insufficient. As noted earlier, the main issue challenged by Cantrell on appeal is whether the State proved beyond a reasonable doubt that he knowingly conspired with Crowson and Patterson to misapply fiduciary funds. Cantrell has not provided conclusive or overwhelming evidence that would discredit the jury's finding. The jury is the sole judge of the weight and credibility of the evidence. As such, it had the right to find the combined testimony of Crowson and Patterson more compelling than the testimony of Cantrell. In conducting a factual sufficiency review, we must examine the complete record. In our neutral consideration of the entire record, we cannot conclude that the jury's finding is against the overwhelming weight of the evidence.

■ Cantrell also contends that the trial court committed reversible error by "constructively amending" the indictment in violation of the due process guarantees of the United States and Texas Constitutions. The indictment avers that Cantrell and Crowson did "intentionally, knowingly, and recklessly misappl[y] fiduciary property, namely money, that the said defendants held as fiduciar[ies] and as persons acting in a fiduciary capacity...." Cantrell argues that since he was not shown to be a fiduciary of the funds at issue, he should not have been convicted simply by evidence showing that Patterson breached his fiduciary duty to Winnie. Additionally, Cantrell contends that the jury could not properly convict him as a party to Patterson's offense of misapplication of fiduciary funds because no such theory was alleged in the indictment. We disagree. This argument misinterprets the current Texas law of parties contained in TEX. PEN.CODE ANN. § 7.01(c) (Vernon 1994).[10]

In *Crank v. State*, 761 S.W.2d 328, 352 (Tex.Crim.App.1988), *overruled on other grounds by Alford v. State*, 866 S.W.2d 619 (Tex.Crim.App.1993), the Texas Court of Criminal Appeals commented on its previous rejection of an argument similar to Cantrell's in the context of a capital murder prosecution. In that case, the appellant filed written objections to the trial court's charge alleging that inclusion of a law of parties theory in the court's charge when none had been in the indictment constituted an impermissible amendment of the indictment in violation of due process. The Court of Criminal Appeals held that a party to an offense may be charged with that offense without alleging in the indictment the facts that make him a party to the offense.[11] More recently Judge Keller stated, "an indictment authorizes conviction on the law of parties even though the indictment's wording indicates that the defendant personally committed the criminal acts alleged." *Planter v. State*, 9 S.W.3d 156, 162 (Tex.Crim.App.1999) (Keller, J., dissenting). Moreover, we held in *Marable v. State*, 990 S.W.2d 421 (Tex. App.—Texarkana 1999, no pet.), that the court properly charged the jury on the law of parties even though the state failed to include such a statement in the indictment. Accordingly, although the indictment at issue only alleged personal liability on the part of Cantrell, it also implicitly alleged liability as a party.

■ Finally, Cantrell contends that the restitution of $370,000.00 ordered by the trial court as a condition of community supervision is erroneous and without any factual basis in the record.[12] We review challenges to restitution orders under an

---

10. TEX. PEN.CODE ANN. § 7.01(c) (Vernon 1994) states in pertinent part:
 All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

11. In *Crank* the court held that the law of parties need not be contained in the indictment stating, "If the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment or information." *Crank v. State*, 761 S.W.2d at 352.

12. There is no dispute that the trial court was within its lawful authority to require restitution to Mitchell/Winnie as a condition of community supervision. *See* TEX.CRIM. PROC.CODE ANN. art. 42.12, § 11(a)(20), (b) (Vernon Supp. 2001); *Martin v. State*, 874 S.W.2d 674, 682 (Tex.Crim.App.1994) ("trial judge's authority to order restitution requires only: (1) that there be a factual basis in the record to conclude the defendant is liable for the criminal conduct .... and (2) that there be a factual basis to determine the amount of restitution.").

abuse of discretion standard. *Cartwright v. State,* 605 S.W.2d 287, 288–89 (Tex. Crim.App. [Panel Op.] 1980). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner. *Montgomery v.. State,* 810 S.W.2d 372, 380 (Tex. Crim.App.1990).

██ There are three restrictions on the restitution a trial court may order. First, the amount must be just and must be supported by a factual basis within the loss suffered by the victim. Second, the restitution ordered must be for the offense for which the defendant is criminally responsible. Third, restitution is proper only for the victim or victims of the offense with which the offender is charged. A trial court's failure to abide by these guiding rules is an abuse of discretion.

Mitchell/Winnie lost approximately $15,000,000.00 in revenue because of the lower price Mitchell/Winnie received for the gas as a result of the conspiracy. Additionally, the evidence shows that Patterson received $740,000.00 in commissions during this scheme. The trial court apparently used this $740,000.00 figure to decide that Cantrell should pay one half or $370,000.00. Although the trial court stated that the amount of restitution he selected was "arbitrary" in relation to the multimillion dollar amount at issue, we find that, in light of the total loss suffered by Mitchell/Winnie, it is not arbitrary in the legal sense so that it was applied without reference to a guiding rule or principle. Therefore, it was not an abuse of discretion.

For the reasons stated, we affirm the judgment of the trial court.