Ahamd Levar Hamilton v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-269-CR

     AHAMD LEVAR HAMILTON,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 97-78-C
                                                                                                                
  
O P I N I O N
 
 
     A jury convicted Appellant Ahamd Levar Hamilton


 of aggravated robbery. See Tex. Pen.
Code Ann. § 29.03 (Vernon 1998). Hamilton was sentenced to ten years confinement in the
Texas Department of Criminal Justice - Institutional Division.
      Hamilton presents three issues in which he complains that: (1) the trial court erred when it
allowed the State to make an improper plea for law enforcement during closing argument; (2) the
evidence is factually insufficient to support his conviction; and (3) the trial court erred when it
allowed him to be impeached with evidence of his prior conviction.
      We affirm the judgment.
FACTUAL BACKGROUND
      On October 31, 1996, the Smoker’s Outlet was robbed by three males. Ronald Starner, the
clerk on duty, testified that three men entered the store at approximately 10:00 in the morning. 
After entering the store, one male approached a glass display counter and asked Starner if he
carried a specific brand of imported cigarettes. Starner opened the display case and handed the
man a pack of the requested cigarettes. Through his fingerprints left on the cigarette package, the
man was later identified as Niko Turnbull. 
      The other two men walked to the closed office doors and opened them. The two men then
wandered to the utility room and the bathroom, opening each room’s door. The two men then
joined Niko Turnbull at the display case. Niko and the two men talked with Starner for
approximately one minute. Then, the two men who checked the store’s closed doors, pulled out
their pistols and demanded that Starner lie on the ground. One of the armed men, later identified
as Eston Turnbull, Niko Turnbull’s brother, held a gun over Starner’s head while Starner lay
prone on the floor. While Eston held the gun over Starner’s head, Starner heard the other armed
man beat the cash register with his pistol in an attempt to open the cash register. Starner heard
Niko Turnbull empty cigarettes into a large trash bag. After the three men left the store, Starner
called the police. 
      Detective Steve January testified that he executed an arrest warrant for Hamilton while he was
incarcerated at the McLennan County Jail for a separate, unrelated offense. Detective January met
with Hamilton at the jail and discussed the robbery with him. Approximately three weeks later,
Hamilton contacted Detective January and confessed to his participation in the robbery and signed
a statement to that effect. 
      Hamilton’s statement described the robbery and stated that after the robbery, he and the
Turnbulls went to various stores and tried to sell the stolen cigarettes. Hamilton stated that
afterwards, Niko and Eston dropped him off at his house by 2:00 that afternoon. 
      Detective January testified that he verified the details in Hamilton’s statement. Detective
January went to each location where Hamilton and the Turnbulls tried to sell the stolen cigarettes. 
At each location, Detective January showed a photo line-up that included a picture of Hamilton. 
Barry Vaughn, an owner of a convenience store where Hamilton and the Turnbulls tried to sell
cigarettes, identified Hamilton. Susie Stewart, a bartender at a bar where Hamilton and the others
attempted to sell cigarettes, also identified Hamilton. Detective January showed the same photo
line-up to Starner. However, Starner could not identify Hamilton, only Niko and Eston Turnbull.
      Sometime near Christmas, Hamilton recanted and stated that he did not participate in the
robbery. Hamilton claimed that he falsely admitted to the robbery after the real perpetrator,
William Rymer, offered him $1,000 in exchange for his confession. Hamilton argued that at the
time he agreed to admit to the robbery, his probation was likely to be revoked and that he did not
have a job. Hamilton testified that on the day of the robbery, he was at a Boys’ and Girls’ Club
from about 8:00 until 11:30 that morning, helping decorate for a Halloween carnival. Hamilton
testified that while he was at home that day, the true robbery participants came by his home and
told him the details of the robbery. Hamilton admitted that while he did not participate in the
robbery, he did help the others sell the stolen cigarettes until 7:00 that evening. Hamilton stated
that he had several meetings with the participants in which they told him more details about the
robbery. Hamilton testified that William Rymer offered him $1,000 in exchange for Hamilton’s
confession to the crime. Hamilton stated that he subsequently confessed, in accordance with his
agreement with William Rymer. Hamilton testified that Rymer did not pay him and that is why
he decided to come forward and tell the truth. 
      Hamilton presented one alibi witness, Lupe Dempsy, Unit Director for the Boys’ and Girls’
Club of Waco, who testified that he was at the Boys’ and Girls’ Club the entire morning of the
robbery. 
PLEA FOR LAW ENFORCEMENT
      Hamilton’s first issue on appeal complains that the trial court erred when it did not grant his
request for a mistrial after the State allegedly made an improper plea for law enforcement. 
Hamilton claims that the State unlawfully called upon the jury to assess a particular punishment
because the people of the community expected or demanded such a punishment. Hamilton argues
that the State engaged in improper jury argument which was harmful error that affected his
substantial rights. 
      The State argues that its jury argument during the punishment phase of Hamilton’s trial was
a proper plea for law enforcement. The State claims that the trial court sustained Hamilton’s
objection to its allegedly improper jury argument and also instructed the jury to disregard the
comment. The State claims that jury argument was proper and if not, the court’s instruction to
disregard cured any possible error.
      Proper jury argument must be confined to four permissible areas: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) answers to the arguments of opposing
counsel; and (4) pleas for law enforcement. Wilson v. State, 938 S.W.2d 57, 59 (Tex. Crim. App.
1996) (en banc); Davila v. State, 952 S.W.2d 872, 878-79 (Tex. App.—Corpus Christi 1997, pet.
ref’d). It is well-settled that asking the jury to be the voice or conscience of the community is a
proper plea for law enforcement. Boston v. State, 965 S.W.2d 546, 548-49 (Tex. App.—Houston
[14th Dist.] 1997, pet. ref’d); Barcenes v. State, 940 S.W.2d 739, 749 (Tex. App.—San Antonio
1997, pet. ref’d); Fields v. State, 932 S.W.2d 97, 111-12 (Tex. App.—Tyler 1996, pet. ref’d);
Caballero v. State, 919 S.W.2d 919, 924 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d);
Lawson v. State, 896 S.W.2d 828, 833 (Tex. App.—Corpus Christi 1995, pet. ref’d). However,
the State cannot argue or tell the jury that the community expects or demands a particular result. 
Borjan v. State, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (en banc); Cortez v. State, 683
S.W.2d 419, 420-21 (Tex. Crim. App. 1984) (en banc).
      During the punishment phase, of Hamilton’s trial, the State told the jury that they “have the
responsibility of being the voice and the conscience of the community.” The State did not tell the
jury that the community expected or demanded a particular result. Thus, the State made a proper
plea for law enforcement.
      We overrule Hamilton’s first issue.
FACTUAL INSUFFICIENCY
      Hamilton’s second issue on appeal complains that the evidence was factually insufficient to
support his conviction. Hamilton argues that the overwhelming weight of the evidence proves that
he was not at the store the morning of the robbery. Hamilton further argues that the lack of
physical evidence


 and Starner’s inability to identify him as one of the perpetrators further proves
that he did not commit the robbery and that the evidence is factually insufficient to support his
conviction.
      The State argues that Hamilton confessed to the crime and described in great detail the events
of the robbery. Detective January verified many of the details of Hamilton’s confession and
several witnesses identified Hamilton. Further, the State argues that the testimony of Hamilton’s
sole alibi witness Dempsy, was contradicted several times at trial. Dempsy testified that she was
at the Club the entire morning of Halloween and therefore knew that Hamilton was there the entire
morning. However, Dempsy also stated that she left during the morning to run some errands and
then returned later. Dempsy also admitted that she loved Hamilton “like a son.” Dempsy
admitted that she did not immediately come forward to either the police or the State and verify
Hamilton’s alibi. Rather, she approached Hamilton approximately one month before his trial and
agreed to testify. 
      The State also argues that Hamilton’s “true” version of the events was contradicted at trial. 
Hamilton stated that he sold cigarettes from about 3:00 to 7:00 the night of the robbery, but was
at home by 7:00 that evening. However, Stewart, a bartender who identified Hamilton as one of
the men who tried to sell her cigarettes on the day of the robbery, testified that Hamilton came into
her bar between 8:00 and 11:30 that night. 
      When reviewing whether the evidence was factually sufficient, we must view the evidence
without the prism of “in the light most favorable to the prosecution” and set aside the verdict only
if it is so contrary to the overall weight of the evidence to be clearly wrong and unjust. Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (en banc); Clewis v. State, 922 S.W.2d 126,
129 (Tex. Crim. App. 1996) (en banc). We must review all of the evidence and consider it as a
whole, not just viewing it in the light most favorable to the other party. Cain, 958 S.W.2d at 408. 
The jury is the sole judge of the credibility of the witnesses and the weight to be given to their
testimony. Tidmore v. State, 976 S.W.2d 724, 730 (Tex. App.—Tyler 1998, pet. ref’d). When
performing our review, we must give due deference to the fact finder’s assessment of the weight
and credibility of the evidence in order not to act as the “thirteenth juror.” Calhoun v. State, 951
S.W.2d 803, 810 (Tex. App.—Waco 1997, pet. ref’d). 
      Hamilton did present some evidence that he was not at the store at the time of the robbery. 
However, the State contradicted Hamilton’s alibi witness and presented evidence that Hamilton
was not at the Boys’ and Girls’ Club as his alibi witness claimed. The jury was the sole judge of
Hamilton’s credibility and that of his alibi witness and was free to believe or disbelieve Hamilton’s
evidence. After our review of the evidence, we cannot say the jury’s verdict is so contrary to the
overall weight of the evidence as to be clearly unjust. 
      We overrule Hamilton’s second issue. 
IMPEACHMENT BY EVIDENCE OF PRIOR CONVICTION
      Hamilton’s third issue complains that the trial court erred when it allowed the State to impeach
him with evidence of a prior conviction for theft from a person. Hamilton claims that the two
offenses were so similar that it was highly likely that the jury convicted him based upon their
perception of his past pattern of conduct. Hamilton also claims that his credibility was not a
critical issue because he presented an alibi defense. 
      The State argues that the trial court did not err because the probative value of Hamilton’s
conviction far outweighed its prejudicial effect. The State claims that the trial court correctly
analyzed the admission of Hamilton’s previous conviction and that it was proper. 
      A defendant who testifies at trial places his credibility at issue and may be impeached and 
contradicted like any other testifying witness. Harper v. State, 930 S.W.2d 625, 630-31 (Tex.
App.—Houston [1st Dist.] 1996, no pet.); Booker v. State, 929 S.W.2d 57, 65 (Tex.
App.—Beaumont 1996, pet. ref’d). Generally, a defendant who testifies may be impeached by
evidence of a prior conviction if the crime involved moral turpitude and the court determines that
the probative value of admitting the evidence outweighs its prejudicial effect. Tex. R. Evid.
609(a); Theus v. State, 845 S.W.2d 874, 879-80 (Tex. Crim. App. 1992) (en banc); Hernandez
v. State, 976 S.W.2d 753, 755 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d). When
determining whether the probative value of a defendant’s previous conviction outweighs its
prejudicial effect, the court examines: (1) the impeachment value of the prior crime; (2) the
temporal proximity of the past crime relative to the charged offense and the witness’ subsequent
history; (3) the similarity between the past crime and the offense being prosecuted; (4) the
importance of the defendant’s testimony; and (5) the importance of the credibility issue. Theus,
845 S.W.2d at 880; Gaffney v. State, 937 S.W.2d 540, 543 (Tex. App.—Texarkana 1996, pet.
ref’d). When reviewing a trial court’s decision to admit evidence of a defendant’s previous
conviction, we accord the trial court “wide discretion” and only reverse when the court’s decision
lies outside the zone of reasonable disagreement. Theus, 845 S.W.2d at 881; Gaffney, 937
S.W.2d at 543.
      Analyzing the court’s decision under the Theus factors, we find that the court did not abuse
its discretion when it allowed the State to impeach Hamilton with his previous conviction. First,
Hamilton’s previous conviction was for theft from a person, a crime of moral turpitude. Ludwig
v. State, 969 S.W.2d 22, 28 (Tex. App.—Fort Worth 1998, pet. ref’d); Hardeman v. State, 868
S.W.2d 404, 405 (Tex. App.—Austin 1993, no pet.). Crimes that involve moral turpitude tend
to have a high impeachment value. See Theus, 845 S.W.2d at 881. Consequently, the
impeachment value of Hamilton’s previous conviction was high. 
      Second, the temporal proximity of Hamilton’s first offense relative to his current offense was
very short. Hamilton committed his first offense less than nine months before his current offense. 
This factor weighs in favor of the admissibility of Hamilton’s first conviction.
      Third, Hamilton’s previous conviction for theft was similar to his current offense of
aggravated robbery in that both offenses involved an element of theft. Normally this militates
against the admission of a previous conviction because there is danger that the jury will convict
the defendant based upon their perceptions of the defendant’s past conduct. See Theus, 845
S.W.2d at 881. However, aggravated robbery is considered to be an aggravated form of assault
rather than an aggravated form of theft. Hightower v. State, 629 S.W.2d 920, 922-23 (Tex. Crim.
App. [Panel Op.] 1981); Camacho v. State, 825 S.W.2d 168, 170-71 (Tex. App.—Fort Worth
1992, pet. ref’d). Therefore, Hamilton’s first offense is more similar to a robbery conviction
while his current offense is more similar to an assault conviction. Thus, the two offenses were
sufficiently dissimilar so that there was not a high probability that the jury would use Hamilton’s
previous conviction as evidence of his propensity to commit thefts rather than as proper evidence
of his credibility. 
      Lastly, the need to impeach Hamilton’s credibility was high. It is true that Hamilton
presented an alibi defense. Normally when a defendant presents an alibi defense, the defendant’s
credibility is not a critical issue because the defendant will have other witnesses who will be able
to give evidence of his defense. See Theus, 845 S.W.2d at 881. However, Hamilton presented
the testimony of only one alibi witness in addition to his testimony. Further, Hamilton’s alibi
witness’ testimony was contradicted by the State. Therefore, Hamilton’s credibility was critical
to his alibi defense. 
      We hold that the trial court did not abuse its discretion in allowing evidence of Hamilton’s
previous conviction.
      We overrule Hamilton’s third issue.
      For the reasons stated, we affirm the judgment.


                                                                               REX D. DAVIS
                                                                               Chief Justice

Before Chief Justice Davis
      Justice Cummings (not participating) 
      Justice Vance
Affirmed
Opinion delivered and filed February 17, 1999
Do not publish