**Affirmed as Modified and Memorandum Opinion filed June 24, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00504-CR

---

**KENNETH WAYNE BIGBIE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1512397**

---

## MEMORANDUM OPINION

A jury found appellant guilty of continuous sexual abuse of a young child on or about October 16, 2012 continuing through January 25, 2015. *See* Jessica Lunsford Act, 80th Leg., R.S., ch. 593, § 1.17, 2007 Tex. Gen. Laws 1120, 1127–28 (adding Penal Code section 21.02),[1] *amended by* Act of Apr. 7, 2011, 82d Leg.,

---

[1] In 2007 the legislature created the offense of continuous sexual abuse of a young child or children in response to an expressed need to address sexual assaults against young children who are typically unable to give precise dates when there are ongoing acts of sexual abuse. *See Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("Perhaps

R.S., ch. 1, § 6.04, sec. 21.02(c), 2011 Tex. Gen. Laws 1, 15–16 (since amended; hereinafter "2011 Penal Code § 21.02").[2] The jury assessed punishment of life imprisonment. Tex. Penal Code Ann. § 21.02(h); *see* Tex. Penal Code Ann. § 12.32. Appellant brings five issues on appeal: (1) legal insufficiency; (2) denial of his motion for a directed verdict; (3) and (4) denial of two separate motions for a mistrial during closing argument; and (5) admission of evidence of bad acts during the punishment phase. We modify the trial court's judgment to delete an incorrect special finding that appellant waived his right to appeal, and as modified, affirm the trial court's judgment as challenged on appeal.

## I.   BACKGROUND

The focal point of testimony at trial was allegations by the complainant, appellant's granddaughter, who was ten-years old at trial. Complainant testified she stayed at appellant's house once or twice a month over the span of approximately two years. She would often, but not always, sleep in appellant's bed, sometimes with her sister as well. Complainant testified that appellant would not always abuse her when she slept in his bed, though he did "a lot of the times." The abuse included taking her clothes off and touching her mouth, "private parts," and "butt" with his penis. He would also place his hands "all over [her] body." He put his finger in her "butt hole" once or twice that she could remember. Once or

---

the Texas Legislature can address this conundrum and consider enacting a new penal statute that focuses upon a continuing course of conduct crime—a sexually abusive relationship that is marked by a pattern or course of conduct of various sexual acts.").

[2] This statute was amended in 2017. Though the 2017 amendments do not apply to this case, the amendments are immaterial to the issue raised by appellant. *See* Act of May 28, 2017, 85th Leg., R.S., ch. 685, § 31, sec. 21.02(b), 2017 Tex. Gen. Laws 3038, 3056 (adding "regardless of whether the actor knows the age of the victim at the time of the offense"); Act of May 26, 2017, 85th Leg., R.S., ch. 1038, § 2, sec. 21.02(b), 2017 Tex. Gen. Laws 4072, 4072 (adding "regardless of whether the actor knows the age of the victim at the time of the offense"). As above, we refer to the prior statute in effect during the time period relevant to this case as "2011 Penal Code § 21.02."

twice he put his penis in her mouth. Sometimes "milk stuff" would come out of his penis. She did not recall appellant putting his mouth on her vagina.

Kari Prihoda, from Children's Safe Harbor, a children's advocacy center in Montgomery County, testified that she conducted a forensic interview of complainant in February 2015, when complainant was six-years old. During the interview, complainant said that appellant[3] would "dick and lick her" in his bedroom at his residence. Examples of abuse including appellant putting his "dick," by which complainant meant appellant's penis, in complainant's mouth and "the milk stuff com[ing] out" of his "dick" into her mouth. Complainant also said that appellant penetrated her "butt hole" with her finger, although at other times during the interview she said that no one touched her "butt." Complainant initially said appellant's penis only touched her mouth; when asked to say more, she said it also touched the part "where she pees from." Complainant said each act of abuse occurred more than one time. As to the time frame for the abuse, complainant "indicated the last time that something happened she was 6" and described incidents occurring when she was four- and five-years old. Complainant stated that the most recent incident occurred "a few days ago or a day before" the interview, although it was Prihoda's understanding at trial that complainant had not seen appellant for approximately a month before the interview. Prihoda also testified it was very difficult for six-year-olds to "comprehend dates and times in the past."

Other witnesses testified that complainant told them that appellant sexually abused her. Therapist Valerie Bryan testified that during a joint therapy session, complainant and her sister told Bryan that their grandfather "touched their private areas." Therapist Amanda Manning testified that complainant spontaneously reported to her that her grandfather "would take off my pants and underwear and

---

[3] During the interview, complainant identified her abuser as her grandfather, "Ken."

put his mouth on my vagina" and would put "milk" from his penis on her. In addition, Tami Lowrie, complainant's elementary-school teacher, testified that complainant told her that her grandfather had touched her "in the bathing suit area."

Complainant's sister, who was 13-years old at trial, also testified. Sister testified that she slept over at appellant's house more than 20 times from October 2012 through January 2015. Appellant would tell sister to sleep in his room, and she often would, sometimes with complainant as well. All three of them would be naked. Sister testified that, every time she slept in appellant's room, appellant would touch her "boobs" and "vagina" with his hands, and he sometimes touched her "butt" as well. Sister saw appellant touch complainant "the same way." Sister saw appellant put his penis in complainant's mouth "a lot." She saw appellant touch complainant's "butt," but not put his fingers inside her "butt." She sometimes saw appellant "put his mouth on [complainant]'s part that she pees out of." Sister testified that she also had a forensic interview at Children's Safe Harbor, during which she lied and told the forensic interviewer that appellant had not abused her, and also stated that she had seen appellant abuse complainant only one time. She further testified that, "Every time we would go over there, [appellant] would say not to say anything."

Jamie Ferrell, a sexual-assault nurse examiner (SANE), testified that she conducted the SANE examinations of complainant and her sister. She said the exams revealed no injuries, but that none would be expected based on the allegations.

Appellant did not testify. In addition to recalling Prihoda to further discuss complainant's forensic interview, appellant called one of his daughters as a character witnesses and a Child Protective Services (CPS) caseworker, who

4

testified that teacher Lowrie had made a report to CPS that complainant had alleged that her uncle, not her grandfather, had "touched her in the bathing suit area." Lowrie testified that she did not recall complainant making allegations against her uncle and that complainant "consistently said grandfather."

## II. ANALYSIS

### A. Right of appeal

Although no party has raised this issue, we first address a conflict in the record regarding appellant's right of appeal. The trial court signed a certification of defendant's right of appeal (CODRA) stating that this case "is not a plea-bargain case, and the defendant has the right of appeal." In its judgment, however, the trial court made the following special finding: "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED."

This court has the power to correct and reform the judgment of the court below "to make the record speak the truth" when it has the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc) (Onion, J., retired presiding judge of Court of Criminal Appeals, sitting by designation and writing en banc court's opinion); *see French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting reasoning of *Asberry*). In a criminal case, Texas Rule of Appellate Procedure 43.2(b) (court of appeals may "modify the trial court's judgment and affirm it as modified") and its predecessors function in part as a means for the appellate court to render judgment nunc pro tunc when the written judgment does not reflect what occurred in open court at trial. Tex. R. App. P. 43.2(b); *see Asberry*, 813 S.W.2d at 529 ("Appellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record."). The authority of an appellate court to reform incorrect

judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court. *Asberry*, 813 S.W.2d at 529–30. "The appellate court may act sua sponte and may have the duty to do so." *Id.* at 530.

Here, the record supports the trial court's CODRA. Specifically, the record shows that this case was not a plea-bargain case, as appellant did not plead guilty or nolo contendere, and accordingly the rules restricting appeal in such circumstances do not apply. *See* Tex. R. App. P. 25.2(a)(2); Tex. Code Crim. Proc. Ann. art. 44.02. Under these circumstances, we conclude that the trial court's special finding of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." was a clerical error, and we modify the judgment to delete that special finding. Tex. R. App. P. 43.2(b); *see Asberry*, 813 S.W.2d at 529–30.

## B. Legal sufficiency of the evidence

In issue one, appellant argues the evidence is legally insufficient to support his conviction for continuous sexual abuse of a young child. In issue two, appellant argues the trial court erred by denying his motion for a directed verdict at the close of the State's evidence, which is also reviewed as a challenge to the legal sufficiency of the evidence. *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In determining whether the evidence is sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see also Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) (jury must find every constituent

6

element of charged offense). We may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the jury. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's resolution of any conflicting inferences from the evidence and presume that it resolved such conflicts in favor of the judgment. *Jackson*, 443 U.S. at 326; *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

We measure sufficiency to support a conviction by comparing the evidence presented at trial to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge reflects the governing law, the charging instrument, the State's burden of proof and theories of liability, and an adequate description of the offense for the particular case. *Id*. In conducting a sufficiency review, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

Continuous sexual abuse of a young child is defined as follows:

A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

2011 Tex. Penal Code § 21.02(b). Appellant does not argue that the allegations by complainant do not constitute "acts of sexual abuse" as listed in the statute. *See* Tex. Penal Code Ann. § 21.02(c). Instead, appellant argues insufficient evidence exists to support the element that two or more acts of alleged abuse occurred "during a period that is 30 or more days in duration." 2011 Tex. Penal Code § 21.02(b)(2).

Complainant testified that she stayed at appellant's house once or twice a month over the span of approximately two years; that she would often, but not always, sleep in appellant's bed; and that appellant sexually abused her "a lot of the times" she slept in his bed. Given the multi-year pattern of conduct on the part of appellant, the jury could have reasonably inferred that appellant sexually abused complainant two or more times during a period that is 30 or more days in duration based solely on complainant's testimony. *See Hooper*, 214 S.W.3d at 16–17 (explaining that "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them" and that appellate courts must consider whether inferences are reasonable in light of the "combined and cumulative force of all the evidence").

We overrule appellant's issues one and two.

## C. Improper jury argument—presumption of innocence

In issue three, appellant argues that the trial court erred in denying appellant's motions for mistrial after improper jury argument by the State. Appellant's third issue focuses on the following argument by the State:

> **[THE STATE]: Let me ask you about who has the motive to lie in this case? Is it [appellant], who if he lies well enough he doesn't go to prison?**
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object. There's no testimony about [appellant]—

8

THE COURT: Sustained.

**[THE STATE]: Is it [appellant] who has the motive to lie when he pled not guilty?**

[DEFENSE COUNSEL]: Your Honor, I object—

THE COURT: That is sustained. Disregard that last statement by the prosecutor and don't consider it for any purpose.

[DEFENSE COUNSEL]: And I move for a mistrial.

THE COURT: That's denied.

[THE STATE:] Thank you, Judge. Who has the motive to lie in this case? Well, what did [complainant] gain in this case by telling her truth? Absolutely nothing. All she gained is that title that I told you about, sexual abuse victim; and that's a title that will stay with her for the rest of her life, a title she's not proud of. In fact, it's a title she's ashamed of and she wishes in her heart of hearts wasn't true but that's what she's gained by consistently being honest. All she had to do to remove that is say, I lied.

(emphasis added).

Proper jury argument generally falls within one of the following four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex. Crim. App. 1973). Appellant argues the State's comments were not proper argument because they vitiated the presumption of innocence and drew attention to appellant's choice not to testify. Under the Due Process Clause of the Fourteenth Amendment, an accused in state court has the right to the presumption of innocence, i.e., the right to be free from criminal conviction unless the State can prove guilt beyond a reasonable doubt by probative evidence adduced at trial. *See* U.S. Const. amend. XIV, § 1; *Taylor v. Kentucky*, 436 U.S. 478, 483 & n.12 (1978) (discussing *Coffin v. United States*, 156 U.S. 432, 453 (1895)); *Madrid v. State*, 595 S.W.2d 106, 110 (Tex. Crim. App. 1979); *see also* Tex. Penal Code Ann. § 2.01; Tex. Code Crim. Proc. Ann.

9

art. 38.03. In addition, the prosecutor may not comment on the decision of an accused not to testify, as such a comment violates the privilege against self-incrimination and the freedom from being compelled to testify based on Fifth Amendment due process and Texas rights of the accused. U.S. Const. amend V; Tex. Const. art. I, § 10; *see Griffin v. California*, 380 U.S. 609, 615 (1965); *Bird v. State*, 527 S.W.2d 891, 893 (Tex. Crim. App. 1975).

### 1. Preservation of error and scope of review

The State argues that appellant's arguments were not preserved for our review because appellant's objection in the trial court was too general. A complaint is preserved for appellate review by an objection that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). After the State commented that appellant "ha[d] the motive to lie when he pled not guilty," appellant's trial lawyer stated, "I object," after which the trial court immediately sustained the objection and sua sponte instructed the jury to disregard the comment. Clearly *some* ground for the objection was "apparent from the context" given the trial court's actions. *See id.*; *see also Crocker v. State*, 248 S.W.3d 299, 303 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Moreover, appellant's objection was sustained, and thus apparently understood by the trial court. Any error has been preserved for our review.").

We turn to the nature of the State's comments. Appellant first argues the State's comment denied him the presumption of innocence. The court of criminal appeals has explained that "[a]n argument that counsel and accused did not tell the truth when they entered pleas of not guilty constitutes an effort to deny an accused the presumption of innocence to which he is entitled." *Lopez v. State*, 500 S.W.2d

844, 846 (Tex. Crim. App. 1973). We conclude appellant's argument concerning the presumption of innocence is properly before us.

Appellant also argues that the State improperly commented on his right to remain silent. A prosecutor's comment amounts to a comment on a defendant's decision not to testify only if the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's decision not to testify. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). It is not sufficient that the comment might be construed as an implied or indirect allusion to the defendant's failure to testify. *Id.* Here, the State did not directly comment on the fact that appellant did not testify, but rather mischaracterized his plea of not guilty as testimony. While the comment clearly implicated the presumption of innocence to which appellant was entitled, it does not constitute a comment on the fact that appellant did not testify. *See id.*; *see also Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004) (looking to literal meaning of prosecutor's comments in determining they were not "manifestly intended to comment on appellant's failure to testify"). Accordingly, we will confine our analysis to appellant's argument that the State's comments deprived appellant of the presumption of innocence.

## 2. Standard of review for denial of motion for mistrial

Because the trial court sustained appellant's objection and instructed the jury to disregard the State's comments, the question before this court is whether the trial court abused its discretion by denying appellant's motion for a mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004) ("The only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial. Under those circumstances, the proper

issue is whether the refusal to grant the mistrial was an abuse of discretion."). To evaluate whether the trial court abused its discretion by denying the motion for mistrial, we balance three "*Mosley*" factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). Mistrial is the appropriate remedy when the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Archie*, 340 S.W.3d at 739.

### a. Severity of misconduct

The first *Mosley* factor evaluates the severity of the State's misconduct. The State's comment that appellant "ha[d] the motive to lie when he pled not guilty" constitutes severe misconduct. The entry of a plea to an indictment is not testimony before a jury under oath. *Lopez*, 500 S.W.2d at 846. As above, "[a]n argument that counsel and accused did not tell the truth when they entered pleas of not guilty constitutes an effort to deny an accused the presumption of innocence to which he is entitled." *Id.* In *Lopez*, the court of criminal appeals reversed and remanded based in part on comments during the State's closing argument that the defendant had lied when pleading not guilty. *See id.* While the State attempts to distinguish *Lopez* on the grounds there were additional errors in the State's closing argument, at least one of our sister courts has determined that a closing argument characterizing the appellant's plea of not guilty as a lie can, on its own, warrant reversal. *See Perkins v. State*, 630 S.W.2d 298, 303 (Tex. App.—Houston [1st

Dist.] 1981, pet. ref'd, untimely filed) ("In the instant case, the State's argument that the appellant's plea of 'not true' was a lie amounted to an accusation that the appellant was lying under oath. The court's sanction of such improper argument constitutes reversible error, and the appellant's second ground of error is also sustained.").

The State's misconduct is magnified by the fact that it occurred during the State's closing argument, which occurred after appellant's closing and was the last thing the jury heard before deliberations. *See Norris v. State*, 902 S.W.2d 428, 443 (Tex. Crim. App. 1995) (collecting cases, including *Lopez*, in which "improper comments . . . occurred during closing arguments which is the last thing the jury hears before it begins deliberations; in those cases, this Court held an instruction to disregard could not have cured the error"), *overruled on other grounds by Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008). This factor weighs strongly in favor of concluding the trial court abused its discretion by denying appellant's motion for a mistrial.

### b. Curative measures

The second *Mosley* factor concerns the trial court's curative measures. The trial court promptly sustained appellant's objections regarding the comment that appellant "has the motive to lie when he pled not guilty," sua sponte instructed the jury to "[d]isregard that last statement by the prosecutor and don't consider it for any purpose."

An instruction to disregard will generally cure harm stemming from improper jury argument unless the comments are "so indelible that the jury would simply ignore the trial court's specific and timely instruction to disregard them." *Archie*, 340 S.W.3d at 741. In *Lopez*, the court of criminal appeals determined that the trial court's instruction to disregard did not cure the harm from the prosecutor's

13

statement that the defendant lied when pleading guilty. 500 S.W.2d at 846 ("In holding that the court's instruction to disregard did not overcome the prejudice and harm caused by the prosecutor's arguments, we are not unmindful that the evidence reveals the senseless killing of three police officers, nor are we unaware of the fact that the sufficiency of the evidence to sustain the conviction is not challenged."). As noted above, however, the court's decision in *Lopez* was based not only on comments regarding the presumption of evidence, but also on the prosecutor's discission of evidence outside the record. *See id.* In addition, *Lopez* was decided before the adoption of the *Mosley* test. *See id.*

In a more recent case concerning the presumption of innocence, the court of criminal appeals also considered the charge given to the jury as a curative measure. In *Miles v. State*, the following exchange occurred during closing argument:

> Defense Counsel: One thing I do want to remind you of at this time is that there is a presumption of innocence throughout the trial. At this point in time, by law, my client is presumed to be innocent. And that—
>
> The State: Judge, I'm going to object to that. Not after the trial's over, I wouldn't think. That's the presumption before the trial starts.
>
> The Court: Sustained.
>
> Defense Counsel: Well, this jury has not rendered its verdict. And until you render [your] verdict, that presumption of innocence, I render [sic] to you, is in effect.
>
> The State: I object to that as not being a proper statement of the law.
>
> The Court: Sustained. Let's move on.

204 S.W.3d 822, 823–24 (Tex. Crim. App. 2006). While the State conceded error on appeal, the court of criminal appeals concluded the error was harmless, even though not only was there no limiting instruction, but the trial court, in sustaining the State's objection, gave the impression of agreeing that the presumption of

innocence did not apply.[4] *See id.* Among other factors, the *Miles* court relied on the fact that the prosecution never denied that it had the burden to prove the defendant's guilt beyond a reasonable doubt, and that "the trial court's charge to the jury included an accurate and thorough explanation of the presumption of innocence and what it means in a court of law." *Id.* at 827–28.

As in *Miles*, the State in this case did not disclaim its burden of proof, and the charge included an instruction concerning the presumption of innocence:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

We conclude that the trial court's charge correctly setting forth the presumption of innocence, combined with its prompt instruction to disregard the State's comments, weigh in favor of concluding the trial court did not abuse its discretion by denying appellant's motion for a mistrial. *See Archie*, 340 S.W.3d at 741; *Miles*, 204 S.W.3d at 827–28.

---

[4] While *Miles* was decided under the harmless-error standard, "the question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *see* Tex. R. App. P. 44.2(b).

### c. Certainty of conviction

The third *Mosley* factor considers the certainty of conviction absent the State's misconduct. As summarized above, complainant testified that she slept at appellant's house once or twice a month over a two-year period, and that appellant sexually abused her "a lot of the times" she slept in his bed, which she often did. Forensic interviewer Prihoda testified that complainant gave an account of appellant sexually abusing her from ages four to six, and two therapists and an elementary school teacher testified that complainant had made a report to them about appellant sexually abusing her. Most importantly, complainant's sister provided eyewitness testimony that appellant sexually abused complainant numerous times from October 2012 through January 2015. There was no direct evidence disputing complainant's allegations of sexual abuse.

While the State's evidence supporting appellant's conviction was plentiful, it was also conflicting. For example, complainant testified that she did not recall appellant putting his mouth on her vagina; complainant's sister, however, testified that she sometimes saw appellant "put his mouth on [complainant]'s part that she pees out of." Complainant also testified that appellant put his penis in her mouth one or twice, while complainant's sister stated that appellant put his penis in complainant's mouth "a lot." Sister also admitted that she had lied during her forensic interview, when she told interviewer Prihoda that appellant had not abused her and had only abused complainant once. In addition, complainant told Prihoda during the forensic interview that the last act of abuse occurred "a few days ago or a day before" the interview, although it was Prihoda's understanding that complainant had not seen appellant for approximately a month before the interview.

Weighing the three factors does not yield a clear-cut result. While the State's

misconduct was egregious, the impact of the misconduct was mitigated both by the trial court's instruction to disregard the comments and the instruction regarding the presumption of innocence in the charge. Likewise, while there was substantial evidence that appellant sexually abused complainant on numerous occasions, the testimony at trial was at times inconsistent and conflicting. Given these uncertain circumstances, we conclude the trial court's denial of appellant's requested mistrial falls within the zone of reasonable disagreement, which is the limit of our review under the abuse-of-discretion standard.[5] *See Hawkins*, 135 S.W.3d at 77; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g) (explaining that, under abuse of discretion standard, "an appellate court should not reverse a trial judge whose ruling was within the zone of reasonable disagreement" and discussing trial court's "limited right to be wrong").

We overrule issue three.

## D. Improper closing argument—impugning defense counsel's honesty

In his issue four, appellant argues the trial court erred by denying his motion for a mistrial after the following portion of the State's closing argument:

> [THE STATE:] You heard [defense counsel] ask [complainant, "D]id the prosecutor talk to you in this case?" And it certainly struck me what she said. She said, "Yeah. He told me just—he told me you're

---

[5] While we do not reverse the trial court's judgment based on the prosecutor's conduct to which the trial court sustained objections, we do not condone the prosecutor's behavior, nor should this conduct be viewed as acceptable. Our job is to determine whether reversible error exists; it is for the trial court to maintain order in the courtroom, and for the district attorney to supervise her assistants. Here, even though the trial court twice sustained an objection to the prosecutor's conduct, the prosecutor, undeterred, continued to repeat the theme that the defense had somehow "lied." This conduct cannot be excused as zealous advocacy. Rather, "[i]t shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done." Tex. Code Crim. Proc. Ann. art. 2.01. Even though we have concluded that denial of the motion for a mistrial based on the conduct was not reversible error on the part of the trial court, the conduct was nevertheless outside the primary duty of a prosecuting attorney.

going to do great. Just tell the truth." And at lunch before she testified—she's right—I had the opportunity to go see her and put my arm around her and said, "Sweetheart, you're going to be fine. You're going to do great. Just tell the truth."

Because the truth in this case is enough to convict. **Her truth in this case is all you need. But it's not just from her mouth. That is the lie that they're trying to sell you.**

[DEFENSE COUNSEL]: Your Honor, I'm going to object to that.

THE COURT: Sustained.

[DEFENSE COUNSEL]: And instruct the jury to disregard.

THE COURT: Ladies and gentlemen, disregard that last statement by the prosecutor. Don't consider it for any purpose.

[DEFENSE COUNSEL]: And I'll move for a mistrial.

THE COURT: That's denied. Thank you.

[THE STATE]: You don't just rely on the words coming out of her mouth. This is a puzzle. We have to rely on each of the pieces, and they fit together perfectly if you spend time thinking about them.

(emphasis added). Appellant argues that the State's comment "That is the lie that they're trying to sell you" struck at appellant over the shoulder of his lawyer by impugning defense counsel's honesty, warranting a mistrial. Given that the trial court sustained appellant's objection and instructed the jury to disregard the statement, we conclude this issue has been preserved for our review. Tex. R. App. P. 33.1(a)(1)(A); *see Crocker*, 248 S.W.3d at 303. As above, we review the trial court's denial of appellant's motion for a mistrial for abuse of discretion by applying the *Mosley* factors. *See Archie*, 340 S.W.3d at 739 (citing *Mosley*, 983 S.W.2d 249).

We begin with the severity of the misconduct. The state may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith and insincerity. *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984). A prosecutor runs a risk of improperly striking at a defendant over the shoulder of

18

counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character. *Mosley*, 983 S.W.2d at 259. However, the court of criminal appeals has drawn a distinction between impugning defense counsel's honesty and responding to counsel's arguments. *See Gorman v. State*, 480 S.W.2d 188, 190–91 (Tex. Crim. App. 1972) (prosecutor's comment "[d]on't let him smoke-screen you, he has smoke-screened you enough" was in response to defense counsel's argument attempting to minimize the defendant's prior criminal record and not reversible error). Here, while the State's characterization of defense counsel's argument as a "lie" is inflammatory, the comment did not specifically name defense counsel, and the primary focus of the argument was to rebut the notion that complainant's account was uncorroborated. We conclude that, while the characterization of the argument as a "lie" was beyond the scope of proper closing, the State's misconduct was not severe. *See id.*

Concerning curative measures, the trial court again promptly sustained appellant's objection and instructed the jury to disregard the statement. *See Archie*, 340 S.W.3d at 741 (instruction to disregard will generally cure harm stemming from improper jury argument). As to the certainty of conviction, as above, the State's evidence was substantial but conflicting. Ultimately, given the State's misconduct was not severe, the trial court instructed the jury to disregard the statement, and there was substantial (if conflicting) evidence supporting appellant's conviction, we conclude the trial court did not abuse its discretion by denying the requested mistrial. *See id.* at 740–42.

We overrule issue four.

### E. Bad acts admitted at punishment

In issue five, appellant argues the trial court committed reversible error by

19

admitting evidence of extraneous bad acts during the punishment phase. Appellant argues that the trial court erred by admitting the testimony of appellant's daughter as extraneous-offense evidence at the punishment phase because the trial court had previously excluded the same testimony during the guilt/innocence phase. Appellant's daughter testified at punishment that appellant would expose his penis to her when she was 11- or 12-years old.

Appellant argues that, because this evidence was excluded during the guilt/innocence phase, it should also have been excluded at the punishment phase. Different standards, however, govern the admissibility of extraneous-offense evidence during guilt/innocence and at punishment. To admit evidence of a "separate offense" during the guilt/innocence phase of trial, the trial court must make the threshold determination that the jury could find beyond a reasonable doubt that the alleged separate offense constitutes one of the Penal Code offenses against an individual other than the complainant listed in Code of Criminal Procedure article 38.37. Tex. Code Crim. Proc. Ann. art. 38.37, §§ 2, 2-a. At punishment, however, Code of Criminal Procedure article 37.07 allows for admission of not only "extraneous crime[s]" but also "bad act[s]" that may not rise to the level of a Penal Code offense. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). Under article 37.07, to admit evidence of bad acts at punishment, the trial court must simply make the preliminary finding that the jury could find beyond a reasonable doubt that the bad act could be attributed to the defendant, not that it was a Penal Code offense. *Id.*; *see Haley v. State*, 173 S.W.3d 510, 514–15 (Tex. Crim. App. 2005) ("Under [article 37.07], it is irrelevant whether the conduct the offering party is attempting to prove is, or can be characterized, as an offense under the Texas Penal Code.").

Here, the trial court could have determined that appellant's daughter's

testimony was insufficient to prove beyond a reasonable doubt that appellant's act constituted one of the Penal Code offenses listed in article 38.37, and therefore the testimony was not admissible during guilt/innocence. However, the trial court also could have determined that the testimony was sufficient to prove beyond a reasonable doubt that the act was attributable to appellant, making the testimony admissible at punishment under article 37.07.

We overrule issue five.

### III.  CONCLUSION

We modify the trial court's judgment to delete the special finding, "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." Having overruled appellant's issues, we affirm, as modified, the trial court's judgment as challenged on appeal.


/s/     Charles A. Spain
        Justice


Panel consists of Justices Wise, Bourliot, and Spain.

Do Not Publish—Tex. R. App. P. 47.2(b).